## NOAH ROOT, Respondent, v. THE GREAT WESTERN RAILWAY COMPANY.

(GENERAL TERM, SEVENTH DISTRICT, MARCH, 1869.)

The New York Central Railroad Company received goods from the plaintiff, directed to a certain place on the Michigan Southern railroad, and, under a special agreement limiting its liability to its own route, carried them to Suspension Bridge, upon such route, and there delivered them to the defendant. The defendant's road, extending from Suspension Bridge, N. Y., to Windsor, Canada, connected with that of the Michigan Southern Railroad Company, by ferry from Windsor, at Detroit, where under a contract between the two companies, for the purpose, the defendant was accustomed to deliver freight arriving by its line, to the Michigan Southern Company, for transportation to points on the road of the latter, which collected the entire freight charges on the final delivery, and periodically accounted for the portion thereof, due to the defendant. The defendant received the goods in question for transportation without limiting its general duties as a common carrier.—*Held*, that it impliedly undertook for the carriage thereof to their place of destination, and was liable therefor as a common carrier after it had delivered them to the Michigan Southern Company, at Detroit.

The case distinguished from *Van Santvoord* v. *St. John* (6 Hill, 157), by reason of the contract between the carriers and their custom under it.

If doubt existed as to such liability of the defendant at common law, its liability under the statute of 1847 (chap. 270, § 9) was undeniable.

The defendant having made the contract for transportation at the terminus of its route within the State, it was liable under the provisions of the act although a foreign corporation.

And this was so, although the Michigan Southern Company was a foreign corporation also, and not liable over to the defendant, under the act.

It seems, that the statute in question is not limited to domestic corporations only.

Nor was the defendant's liability, under it for the plaintiff's goods while in charge of the Michigan Southern Company, limited to the case of loss by reason of the latter's "neglect or misconduct."

Nor is the statute in question simply declaratory of the common law; it created a new rule of liability in respect to connecting railroad corporations.

Nor was it material upon the question of the liability that the New York Central Company, and not the defendant, originally received the goods.

By the act in question, each successive railroad company forming a link in the chain of communication between the place of freighting and the

place of destination, which agrees to convey property beyond the terminus of its own road, and receives the goods under such an agreement, is liable, as a common carrier, for the delinquencies of each of the other roads, running in connection with it, over which the property shall subsequently pass, on the route to the place of delivery. *Smith* v. *N. Y. C. R. R. Co.* (43 Barb., 225), upon the latter point, explained.

THIS was an appeal from a judgment upon the report of a referee in favor of the plaintiff.

The action was brought to recover the value of a chest of joiner's tools and clothing which the plaintiff had delivered to the New York Central Railroad Company at Victor, Ontario, N. Y., a place on its road, directed to himself at Burr Oak, Branch county, Michigan, a place on the Michigan Southern and Northern Indiana railroad, and for which he had taken a receipt from the New York Central Railroad Company, which provided that the goods were " to be transported by the New York Central Railroad Company, to their warehouse at Suspension Bridge, ready to be delivered to the party entitled to the same," and " that the company is not to be held liable for the loss of said property, or for any damage or injury to the same, or for any delay in the delivery thereof by any other carrier, cartman or freightman after the same has been loaded, shipped or sent from the company's warehouse at Suspension Bridge aforesaid."

The New York Central Railroad Company carried the goods to Suspension Bridge, N. Y., where its road connected with that of the defendant, and delivered them there in due season from its warehouse to the latter. The defendant's road extended from Suspension Bridge to Windsor in Canada, and from Windsor it connected by water, across the Detroit river, with the road of the Michigan Southern and Northern Indiana Railroad Company; the defendant received the goods unconditionally, and without special contract limiting its general liability or duties as a common carrier, and in due season delivered them to the Michigan Southern and Northern Indiana Railroad Company, at its warehouse in Detroit.

There was an agreement between the defendant and the

Root *v.* The Great Western Railway Company.

Michigan Southern and Northern Indiana Company, by which freight arriving by the defendant's road at Detroit, was received and carried to points on the Michigan Southern road, and the freight money collected on delivery at its destination, for the entire distance on both roads, by the Michigan Southern Company, which paid over to the defendant from time to time the portion to which it was entitled.

While the property was in the custody of the Michigan Southern and Northern Indiana Company, and in its warehouse at Detroit, it was consumed by a fire, together with the warehouse and its other contents, which, as the referee found, had occurred without negligence or fault of either company.

The referee reported in favor of the plaintiff; judgment was entered on his report, and the defendant appealed.

*E. C. Sprague,* for the appellant.

*Quincy Van Voorhis,* for the respondent.

Present—E. D. SMITH, JOHNSON and J. C. SMITH, JJ.

By the Court—JAMES C. SMITH, J.   The plaintiff's property, which the defendants received for transportation, was directed to " Burr Oak, Michigan," a place on the line of the road of the Michigan Southern railroad.   The road of the Michigan Company and that of the defendants were connected together at Detroit, and the Michigan Company was under an agreement with the defendants to carry freight arriving at Detroit by the defendants' road to places along its line.   For this purpose the defendants, pursuant to the agreement, were accustomed to deliver their freight at the warehouse of the Michigan Company at Detroit, and the latter received it there and transported it to its destination, collecting the entire charges for freight on both roads at the place of destination, and at stated periods the Michigan Company settled with the defendants and paid them their share of the freight

thus collected. The defendants having received the plaintiff's property for transportation under these circumstances without any express contract or limitation of their liability, and in the ordinary course of their business as common carriers, impliedly contracted for its carriage to its place of destination. The agreement between the two companies, and their custom, in pursuance of the agreement, distinguishes the case from that of *Van Santvoord* v. *St. John* (6 Hill, 157) and others cited by the appellant's counsel. The agreement between the two companies created reciprocal obligations as between themselves, the defendants being bound to deliver to the Michigan Company for transportation all property coming over their road destined to points on the line of the Michigan Company, and the latter being bound to receive such property and carry it to its destination, and also to collect the freight earned by the defendants in respect to it, and to account to them therefor. Had such a connection existed between the river boats and the canal line in *Van Santvoord* v. *St. John*, it is obvious from the course of reasoning adopted in the published opinions that the decision of that case would have been the reverse of what it was.

But if there is any doubt concerning the defendants' liability, independently of statute, the existence of such liability under the provisions of the act of 1847 (ch. 270) seems to me undeniable. The act referred to provides that whenever two or more railroads are connected together, any company owning either of said roads receiving freight to be transported to any place on the line of either of said roads so connected shall be liable as common carriers for the delivery of such freight at such place. The act further provides that in case any such company shall become liable to pay any sum by reason of the neglect or misconduct of any other company or companies, the company paying such sum may collect the same of the company or companies by reason of whose neglect or misconduct it became so liable (§ 9).

The defendants' counsel argues that the statute does not apply to the defendants for the reason that they are a foreign

corporation, and the statute is evidently framed, it is said, with respect to domestic corporations, and those only. Although the defendants are a foreign corporation, one terminus of their road is in this State, and at that point they received the plaintiff's property and made the contract respecting it, out of which, if at all, the liability arises, which the plaintiff seeks to enforce in this action. In respect to contracts made by the corporation within this State, the corporation is amenable to the laws of the State, and the act in question is applicable to such contracts.

The act also applies, notwithstanding the company owning the connecting road (the Michigan Company) is also a foreign corporation, and its road is wholly without this State. This was held in *Burtis* v. *The Buffalo and State Line Railroad Company* (24 N. Y., 269). If, as is argued by their counsel, the defendants cannot avail themselves of the remedy over against the connecting road, given by the act, by reason of the fact that the defendants and the Michigan company are foreign corporations, they might have protected themselves against liability for a loss occurring through the fault of the connecting road by an express contract to that effect, as suggested by Mr. Justice DENIO in the case last cited.

It is also argued that the statute does not apply to the case, for the reason that the loss was not owing to any neglect or misconduct on the part of the connecting company. But that circumstance does not relieve the company receiving the freight from liability to the owner.

The company receiving the freight for transportation to a point on the line of a connecting road, without any express limitation of its liability, by that very act becomes liable as a common carrier for the delivery of the freight at such point. It insures the property, on its transit, against *all* loss, except that arising from the act of God or the public enemy. Where the loss is caused by the neglect or misconduct of the connecting road, the insurer has a remedy over, by way of indemnity. In all other cases he must make good the loss, without recourse to any other party.

It is further argued, that the section referred to is simply declaratory of the common law, and that the question, therefore, is whether by the common law, carriers are responsible for the delivery of property directed to points beyond their own routes. But the statute creates a new rule. It makes the company receiving the property liable, as a carrier, in respect to the connecting road, as well as its own, unless it expressly provides otherwise by its contract.

Lastly, it is insisted by the counsel for the defendants, that the statute goes no further than to impose the liability in question upon the company originally receiving the property for transportation, to wit., in the present case, the New York Central Railroad Company.

If this position were correct, I should be inclined to agree to the conclusion which the counsel deduces from it, that the plaintiff, by making a contract with that company, expressly relieving it from such responsibility, waived his rights under the statute, or, at least, that the defendants, having no notice of such contract, did not assume any other obligations than those which they would have incurred if such contract had not been made.

But I apprehend the true construction of the act, in this respect, is that each intermediate carrier, as well as the first, who receives property to be transported to a point on the line of a connecting road, without an express limitation of his liability, is responsible for its transportation over his own road, and also over every other connecting road, on which it must subsequently be carried to reach its place of destination. It is not material to his liability whether the previous carrier has been relieved from the responsibility imposed by the statute or not. The intermediate carrier is not liable, however, for loss or injury happening to the property while in the hands of a previous carrier; and this point is all that was decided in the case of *Smith* v. *The New York Central Railroad Company*, cited by the defendants' counsel (43 Barb., 225). Although the question now under consideration was suggested by my learned brother, who wrote the

Root *v.* The Great Western Railway Company.

opinion in that case, his remarks upon it were merely by way of illustrating and enforcing his views of the real point in controversy. The question was not presented by the facts of the case, and consequently it was not before the court and was not decided.

There is no reported case, that I am aware of, in which the question has been adjudicated. As was said by Judge DENIO in *Burtis* v. *The Buffalo and State Line R. R. Co.* (*sup.*): "The act is eminently a remedial law, and should receive a liberal, as distinguished from a narrow, construction." The language of the clause on which this question depends is very broad. It applies to every case of railroads connected together, however many. It makes liable *any* company owning *either* of railroads, receiving freight to be transported to any place on the line of either of said roads so connected, without limiting the liability to the company *first* receiving it. In short, as I read the act, each successive railroad company forming a link in the chain of communication between the place of freighting and the place of destination, which agrees to carry property beyond the terminus of its own road, and receives the goods under such an agreement, shall be liable as a common carrier for the delinquencies of each of the other roads running in connection with it, over which the property shall subsequently pass, on the route to the place of delivery.

The foregoing views of the case make it unnecessary to examine any other question presented by the points of counsel. I am in favor of affirming the judgment.

Judgment affirmed.